UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KEVIN REGER, | ) |
|---|---|
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:16-CV-778 JD ) |
| ARIZONA RV CENTERS, LLC, and THOR MOTOR COACH, INC., | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This action arises out of plaintiff Kevin Reger's purchase of a recreational vehicle. Mr. Reger alleges that after he received the RV, he discovered a number of defects, including rust on the chassis and frame and cracks in its roof. He also discovered that the vehicle had been used as a demonstration model at trade shows, even though he was told that it was "new." He thus asserted a variety of claims against Thor Motor Coach, Inc., which manufactured the RV, and Arizona RV Centers, LLC, which sold him the RV. Those defendants have moved to dismiss the complaint in its entirety. For the following reasons, the motion is granted in part and denied in part.

### I. FACTUAL BACKGROUND

On August 21, 2015, Kevin Reger purchased a new Tuscany RV for $282,999. He purchased the RV in Mesa, Arizona from Arizona RV, LLC, which does business as Camping World of Mesa AZ. As part of the sale, he executed a Retail Installment Contract and Security Agreement, which set forth the terms of his purchase from Arizona RV. The RV was manufactured by Thor Motor Coach, Inc., which also extended an express limited warranty, covering the RV for the first 12 months or 15,000 miles. That warranty covered any defects in

workmanship or materials, subject to a number of exclusions. It required Thor to repair any covered defects, and if Thor failed to do so, allowed Mr. Reger to have the RV repaired at another facility of his choice, at Thor's expense.

At some point after he received the RV, Mr. Reger discovered a number of defects. In particular, he discovered a severe rust problem on the RV's frame and chassis. He also found cracks in the RV's roof, which he suspects were caused by excessive flexing and movement of the RV's structure due to an extension Thor made to the chassis. He further alleges that the chassis extension rendered the RF structurally unsound. In addition, he learned that the RV had been used as a demonstration model at RV shows, and that its generator had run for over 50 hours before the sale, even though the RV had been sold to him as "new." Mr. Reger alleges that he asked Thor to repair these defects, but that it failed or refused to do so, and that it attempted to conceal the structural issues. Accordingly, within a month of the purchase, he attempted to revoke his acceptance and cancel the contract.

Mr. Reger then filed this action against Arizona RV and Thor, seeking to rescind the transaction and also seeking damages for breaches of express and implied warranties, among other theories. He initially filed the complaint *pro se*, but he is now represented by counsel, who filed an amended complaint on his behalf. The defendants moved to dismiss the amended complaint, and that motion is ripe.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim

2

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

Mr. Reger's amended complaint includes seven counts, asserting claims based on implied warranties, express warranties, and consumer protection statutes. Except as noted below as to Count 3, the parties agree that Arizona law governs Mr. Reger's claims. The first three counts assert claims against Thor, while the rest are against Arizona RV. The defendants have moved to dismiss each of the counts. In response, Mr. Reger agreed to the dismissal of one count and asked for leave to amend as to some counts, but opposed the motion as to others. The Court addresses each count in turn.

**Count 1:     Breach of Implied Warranty against Thor**

Mr. Reger first asserts a claim against Thor for a breach of an implied warranty of merchantability, contending that the RV was not in merchantable condition when he bought it. Mr. Reger brings this claim under the Magnuson-Moss Warranty Act, but that Act primarily adopts state law as the source of the parties' rights, so Mr. Reger must show that Arizona law would allow a claim for a breach of an implied warranty against Thor, the manufacturer of the vehicle. *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011). Thor argues

3

that no such warranty exists under Arizona law because it is not in privity with Mr. Reger as to the sale of the RV, since it did not sell Mr. Reger the RV—Arizona RV did—it only manufactured it.

Different states take different approaches as to whether privity is required to give rise to an implied warranty. Because the Magnuson-Moss Act does not modify or address "a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson-Moss Act therefore hinges entirely on the applicable state law." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). "Under Arizona law, privity of contract is required to maintain an action for breach of an implied warranty." *Chaurasia v. Gen'l Motors Corp.*, 126 P.3d 165, 171 (Ariz. Ct. App. 2006).[1] In other words, Arizona law only provides for implied warranties by the seller in a given transaction, not by other parties that manufacture the goods being sold. *Flory v. Silvercrest Indus., Inc.*, 633 P.2d 383, 388–89 (Ariz. 1981) ("In short, we believe that a buyer should pick his seller with care and recover any economic loss from that seller and not from parties remote from the transaction."). Here, Thor only manufactured the RV, it did not sell the RV to Mr. Reger, so it is not in privity of contract as to the sale of the RV to Mr. Reger. Therefore, Mr. Reger cannot assert a claim for breach of an implied warranty against Thor.

---

[1] *See also Nance v. Toyota Motor Sales USA, Inc.*, No. CV-13-8011, 2014 WL 4702781, at *3 (D. Ariz. Sept. 22, 2014) ("Purchasers who buy vehicles from dealerships and other third parties are not in privity of contract with manufacturers."); *Hevey v. Ford Motor Co.*, No. 12-14257, 2013 WL 4496255, at *3 (E.D. Mich. Aug. 21, 2013) (applying Arizona law); *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008) ("Arizona law does not permit recovery to remote parties in the chain of commerce via an implied warranty."); *Plagens v. Nat'l RV Holdings*, 328 F. Supp. 2d 1068, 1073 (D. Ariz. 2004) ("Arizona courts have consistently held that absent privity of contract, a purchaser cannot maintain a claim for breach of implied warranty . . . against a manufacturer."); *Flory*, 633 P.2d at 388–89.

In arguing to the contrary, Mr. Reger notes that Thor did extend an express written warranty, and he argues that the express warranty created the requisite privity.[2] However, in support of that argument, he cites entirely to cases applying the laws of states other than Arizona. While some other states accept the theory that a manufacturer's express warranty satisfies the privity requirement (or do not require privity at all), Arizona has never done so. Rather, courts applying Arizona law have uniformly held that a manufacturer is not in privity with a purchaser, even when the manufacturer offers an express warranty. *E.g.*, *Chaurasia*, 126 P.3d at 171; *Plagens*, 328 F. Supp. 2d at 1073; *Flory*, 633 P.2d at 388–89 (holding that a claim against a manufacturer for an implied warranty failed for lack of privity, but that the plaintiff could still recover against the manufacturer under an express warranty). Mr. Reger also argues that the express warranty's disclaimer of incidental and consequential damages somehow satisfied the privity requirement. But if the express warranty itself did not create privity of contract as to the sale of the RV, then the exclusion of damages for a breach of that express warranty would not either. Therefore, because Thor was not in privity of contract to the sale of the RV, Arizona law does not allow a claim against Thor for breach of an implied warranty. The motion to dismiss is therefore granted as to Count 1.

**Count 2:      Breach of Express Warranty against Thor**

Mr. Reger next asserts a claim against Thor for breach of the express warranty, arguing that Thor failed to properly repair the defects in the RV after his purchase. The RV came with a

---

[2] The complaint does allege that Mr. Reger bought the RV "from Arizona RV Centers and Thor," but his argument makes clear that this was merely alleging a legal conclusion that Thor's express warranty put it in privity of contract to the sale, and Mr. Reger does not claim that he actually purchased the RV directly from Thor. [*See also* DE 2 ¶ 21 ("An implied warranty that the RV was merchantable arose by operation of law as part of the sale, because the RV came with a Thor express warranty, and, by virtue of giving Plaintiff a warranty . . . , Thor was in privity of contract with Plaintiff.")].

limited warranty that covered any defects in workmanship or materials, subject to a number of exclusions. The limited warranty required Thor "to repair any covered defects discovered within the warranty coverage period." [DE 2 p. 16]. It also included a "Back-Up Remedy" if Thor failed to successfully repair any defect after a reasonable number of attempts. In that event, the warranty states that the buyer's "sole and exclusive remedy shall be to have Thor Motor Coach pay an independent service shop of your choice to perform repairs to the defect OR if the defect is incurable, have [Thor] pay diminution in value damages." *Id.* Mr. Reger alleges that Thor breached this warranty by failing and refusing to repair various defects in the RV, including the rust on its frame and chassis, the cracks in its roof, and its structural issues.

In moving to dismiss this claim, Thor first argues that Mr. Reger failed to allege that he availed himself of the back-up remedy, and thus failed to allege that Thor had breached its obligations under the warranty. In response, Mr. Reger admits that the complaint does not allege those details, and he offers no substantive response to Thor's arguments. Instead, he simply asks for leave to amend his complaint to cure this deficiency. Accordingly, the Court will grant the motion to dismiss as to this count, with leave to amend.

Thor also argues that none of the alleged defects are covered under the warranty, but the Court cannot find that to be the case at this stage, such that leave to amend should be denied. First, as to the alleged rust on the chassis and frame, Thor notes that the warranty excludes coverage for "defects . . . to the exterior or finish caused by . . . the environment, . . . including but not limited to rust and corrosion." [DE 2 p. 16]. As Mr. Reger argues, this exclusion applies only to the "exterior or finish" of the RV. The chassis and frame are not part of the "finish" of the RV, and might not be considered part of its "exterior," either, perhaps depending on where the rust was found. Thor also argues that the warranty excludes coverage for "the automotive

chassis and power train." However, it did not raise that argument until its reply brief. In addition, even if this exclusion would apply to the rust found on the chassis, it would not appear to exclude coverage for rust found on the frame. Thus, the Court cannot conclude at this time that it would be futile for Mr. Reger to amend this claim as to the alleged rust problem.

Mr. Reger also alleges that the RV had cracks in its roof and was structurally unsound, which he believes was due to an extension of the chassis. As to these defects, Thor argues that they are not covered under the warranty because they are design defects, not defects in workmanship or materials. However, the complaint does not compel that conclusion. Though the complaint does allege that these defects were caused by the extension of the chassis, it does not specify whether they were caused by the design of the extension or by the materials or workmanship by which it was implemented. In addition, the RV was likely not designed so as to cause cracks in the roof and structural instability, so it is possible that Mr. Reger could plead that those defects were caused by defects in workmanship or materials, in which case they would be covered by the warranty. Thus, dismissal with leave to amend is the appropriate result as to this claim.

**Count 3:      Indiana Deceptive Consumer Sales Act Claim against Thor**

Next, Mr. Reger asserts a claim against Thor under the Indiana Deceptive Consumer Sales Act. That Act provides consumers with a cause of action against suppliers who commit deceptive sales acts. *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 646 (Ind. Ct. App. 2004). The Act provides for two types of actionable deceptive acts: "uncured" deceptive acts and "incurable" deceptive acts. *Id.* at 647; Ind. Code § 24-5-0.5-2(7), (8). An "uncured" deceptive act is "a deceptive act . . . with respect to which a consumer who has been damaged by such act has given notice to the supplier," but that the supplier fails to cure. Ind. Code § 24-5-0.5-2(7). An "incurable" deceptive act is "a deceptive act done by a supplier as part of a scheme, artifice, or

7

device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(8). Thus, an uncured deceptive act requires pre-suit notice by the consumer to the supplier, whereas an incurable deceptive act requires fraud, which must be pled with particularity. Fed. R. Civ. P. 9(b).

In moving to dismiss this claim, Arizona RV argues in part that the complaint fails to allege that Mr. Reger provided notice of the alleged deceptive acts, as would be required for an "uncured" deceptive act, and that it also fails to allege any fraud with particularity, as would be required for an "incurable" deceptive act. Again, Mr. Reger concedes both of those points, and seeks leave to amend to cure these deficiencies. Thus, this claim will likewise be dismissed.

Arizona RV further argues that this claim should be dismissed with prejudice because Arizona law, not Indiana law, would govern such a claim, so a claim under this Indiana statute is not available. However, the Court cannot resolve the choice of law question at this point, given Mr. Reger's threadbare arguments and the lack of clarity as to the basis for this claim. Under Indiana's choice of law rules, "the presumption is that the traditional *lex loci delicti* rule (the place of the wrong) will apply." *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). "Under this rule, the court applies the substantive laws of 'the state where the last event necessary to make an actor liable for the alleged wrong takes place.'" *Id.* (quoting *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987)). In his response brief, Mr. Reger argues that Thor's tortious conduct took place "one year before the sale" when Thor allowed the RV's chassis to rust. [DE 14 p. 13–14]. Thor could not have been liable for that alleged wrong until the RV was sold to Mr. Reger in Arizona, though, in which case Arizona law would govern the claim. However, Mr. Reger's complaint also vaguely references "post-sale" conduct by Thor as a basis for this claim, alleging that Thor concealed the defects in the RV. The complaint does not identify where that conduct took place, though, nor do the parties' briefs address what effect,

if any, that would have on the choice of law analysis. Accordingly, though the choice of law may yet pose an impediment to this claim, the Court does not dismiss it with prejudice at this time, and Mr. Reger will be allowed to amend this claim.

**Count 4:      Breach of Implied Warranty against Arizona RV**

Mr. Reger asserts the remaining counts against Arizona RV. In Count 4, he asserts a claim for breach of the implied warranty of merchantability. Arizona RV moves to dismiss this count on the ground that the contract of sale disclaimed any implied warranties. [DE 2 p. 18 ("[T]he Seller is selling the Vehicle as is – not expressly warranted or guaranteed and without implied warranties of merchantability . . . or fitness for a particular purpose.")]. Thus, the question is whether that disclaimer is valid.

Under Arizona law, "implied warranties may be disclaimed in writing only if the disclaimer is conspicuous." *Nomo Agroindustrial Sa De CV v. Enza Zaden N. Am., Inc.*, 492 F. Supp. 2d 1175, 1180 (D. Ariz. 2007); Ariz. Rev. Stat. Ann. § 47-2316(B) ("[T]o exclude or modify the implied warranty of merchantability . . . the language . . . must be conspicuous."). Arizona law defines "conspicuous" as follows:

> "Conspicuous", with reference to a term, means so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is conspicuous or not is a decision for the court. Conspicuous terms include the following:
>
> (a)     A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text of the same or lesser size; and
>
> (b)     Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Ariz. Rev. Stat. Ann. § 47-1201(10).

Here, the disclaimer appears at the top of page two of a five-page contract, under the heading of "Warranties." [DE 2 p. 18]. However, the heading is not in capitals, and it is not distinguished in any way from the dozen other headings within the contract, each of which use the same font in the same size, and which are embedded in a black bar. In addition, the text of the heading does not draw attention to the fact that it is actually disclaiming warranties, as it says only "Warranties"—not "Disclaimer of Warranties" or "Limitation of Warranties." Nor is the language of the disclaimer itself distinguished or set apart from the rest of the contract. The text is in the same font as and is no larger than the rest of the text in the contract, which is rather small. It is not set off from the rest of the contract in any other way, either.[3] In contrast, some other portions of the contract include capitals or larger font, but the disclaimer of warranties does not. Arizona RV notes that Mr. Reger did initial at the bottom of page two, on which the disclaimer appears. However, he initialed the bottom of each of the five pages of the contract, so initialing this page would not have called any additional attention to the disclaimer. And whereas multiple other headings in the contract required Mr. Reger's signature, this one did not.

In sum, Arizona RV has not identified any factor that distinguishes the warranty disclaimer from the rest of the contract, and the Court sees nothing that would draw a person's attention to this particular language. Though the examples offered in the statutory definition of "conspicuous" are not exclusive, the disclaimer here did not meet any of them: the heading is not "in capitals" and is not "in contrasting type, font or color" to any of the other headings, and the body of the disclaimer is not "in larger type than the surrounding text, or in contrasting type, font or color," or otherwise set off from the remainder of the contract. Other than presuming that a

---

[3] The contract attached to the complaint appears to be a black-and-white copy, but neither party suggests that the actual contract used a different color to emphasize this language.

person would read the entirety of a contract—a presumption that would be inconsistent with the requirement that the provision be "conspicuous" in order to be enforceable—there is no reason why a reasonable person "ought to have noticed" this language. Accordingly, the Court cannot find at this stage that Arizona RV has validly disclaimed the implied warranty of merchantability, so the motion to dismiss is denied as to this count.[4]

**Count 5:      Revocation of Acceptance against Arizona RV**

Mr. Reger next asserts a claim against Arizona RV seeking to revoke his acceptance of and cancel the contract for the RV, on the basis that the RV failed to conform to the parties' agreement and that the alleged defects substantially impaired the RV's value. In moving to dismiss this count, Arizona RV argues that it disclaimed any implied warranties and sold the RV "as is," so no non-conformity could exist. The parties agree that this argument rises and falls with the resolution of Count 4. [DE 15 p. 10]. Because the Court has denied the motion to dismiss Count 4, as Arizona RV has not shown that it validly disclaimed the implied warranties, the Court likewise denies the motion to dismiss Count 5.

**Count 6:      Arizona Consumer Fraud Act Claim against Arizona RV**

In Count 6, Mr. Reger asserts a claim against Arizona RV under the Arizona Consumer Fraud Act. In support of this claim, Mr. Reger alleges that Arizona RV misrepresented the condition of the RV, as it represented that the RV was "new" when in fact it had been used for demonstration purposes at RV shows. He further alleges that Arizona RV charged him an inspection fee but did not actually perform an inspection, and that it did not disclose to him that the RV had a rust problem and was structurally unsound.

---

[4] Arizona RV suggests in its brief that it also disclaimed implied warranties through other documents that Mr. Reger signed but that were not included in the complaint, but it did not submit those documents or ask the Court to consider them at this stage.

In moving to dismiss this count, Arizona RV relies solely on the one-year statute of limitations applicable to the Arizona Consumer Fraud Act. Ariz. Rev. Stat. Ann. § 12-541. It notes that the complaint alleges that Mr. Reger bought the RV on August 21, 2015, and that Mr. Reger sought to revoke his acceptance of the contract "[w]ithin a month of the purchase." [DE 2 ¶ 5, 16]. Arizona RV thus argues that Mr. Reger was aware of the alleged defects by September 2015. Because the statute of limitations for consumer fraud claims "begins running 'when the defrauded party discovers or with reasonable diligence could have discovered the fraud,'" *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1380 (Ind. Ct. App. 1994) (quoting *Mister Donut of Am., Inc. v. Harris*, 723 P.2d 670, 672 (1986)), Arizona RV argues that Mr. Reger's claim accrued by September 2015. It therefore contends that Mr. Reger's complaint filed on November 16, 2016, more than one year later, was filed outside the statute of limitations.

Though this timeline may present an impediment to Mr. Reger's claim at a later stage of this case, it is not grounds for dismissal at the pleading stage. The statute of limitations is an affirmative defense, and "'complaints need not anticipate and attempt to plead around defenses.'" *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (quoting *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)). Accordingly, "a motion to dismiss based on failure to comply with the statute of limitations should be granted only where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Id.* (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). In other words, dismissal on this ground at the pleading stage is only appropriate when the plaintiff "affirmatively plead[s] himself out of court." *Id.*; *see also Vinson v. Vermilion Cty., Ill.*, 776 F.3d 924, 929 (7th Cir. 2015) ("[A] plaintiff may plead herself out of court when she includes in her complaint facts that establish an impenetrable defense to her claims."); *Stewart*, 665 F.3d at 935

("[W]hen a plaintiff's complaint . . . sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.").

Here, the complaint does allege that Mr. Reger attempted to revoke his acceptance of the RV a month after he bought it, which implies that he was aware of at least some of the alleged defects at that time (more than a year before he filed suit). However, the complaint does not allege which defects Mr. Reger was aware of at that time. Nor does it allege what he knew and when relative to his allegations of fraud. For example, Mr. Reger could have revoked his acceptance of the RV upon discovering the rust problem with the chassis, without yet having learned that Arizona RV defrauded him by falsely representing that the RV was "new" or by charging him for an inspection it did not perform. In that event, the fraud claim may not have accrued, even if Mr. Reger had already discovered some defects and revoked his acceptance of the RV for those reasons. *See Alaface*, 892 P.2d at 1380 ("The cause of action [for consumer fraud] accrues when the plaintiff knows or should have known of both the *what* and *who* elements of causation." (internal quotation omitted)). Because the statute of limitations is an affirmative defense, the complaint need not be any more specific as to when the claim accrued, and the complaint's ambiguity in that regard prevents the Court from finding that the statute of limitations necessarily bars this claim. Therefore, the motion to dismiss Count 6 is denied.

**Count 7:    Indiana Deceptive Consumer Sales Act Claim against Arizona RV**

Finally, as an alternative to Count 6, Mr. Reger asserted a claim against Arizona RV under the Indiana Deceptive Consumer Sales Act. Because both parties agree that Arizona law would apply to a tort claim against Arizona RV, Mr. Reger agrees to the dismissal of this claim under Indiana law. Accordingly, the Court grants the motion to dismiss as to Count 7.

## IV.  CONCLUSION

For those reasons, the defendants' motion to dismiss [DE 12] is GRANTED in part and DENIED in part. Counts 1, 2, 3, and 7 are DISMISSED, and the Court GRANTS Mr. Reger leave to file an amended complaint by September 20, 2017.

SO ORDERED.

ENTERED:  August 21, 2017

                                                    /s/ JON E. DEGUILIO  
                                                    Judge  
                                                    United States District Court