# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA AT SOUTH BEND

Kevin Reger,                                )

                  Plaintiff,          )

                     v.              )     No.  3:16-cv-778

Arizona RV Centers, LLC, and        )     Injunctive relief requested

Thor Motor Coach, Inc.,           )

                Defendants.     )     JURY DEMANDED

## SECOND AMENDED COMPLAINT

**NOW COMES** Plaintiff, Kevin Reger, and, as and for his First Amended Complaint states as follows:

### PRELIMINARY STATEMENT

This is an action arising out of a purchase of a defective RV.  Plaintiff sues for revocation of acceptance, cancellation of his contract, warranty damages, and fraud.

### JURISDICTION AND VENUE

Diversity jurisdiction arises under 28 U.S.C. §1332.  Plaintiff is a citizen of Illinois.  Arizona RV Centers is a Minnesota corporation, doing business in Arizona.  Thor is a Delaware corporation, with its principal place of business in Elkhart County, Indiana.  The amount of controversy exceeds $75,000.00.  Under Thor's choice of venue provision in its warranty contract, the action must be brought in Elkhart County, IN.  Alternatively, jurisdiction arises under the Magnuson-Moss Warranty Act, a federal statute, because the amount in controversy in this suit exceeds $50,000.00.  15 U.S.C. §2310(d)(3)(B).

### I.  BACKGROUND

#### A.  The Parties

1.  Plaintiff Kevin Reger is a natural person.

2.  The subject vehicle was bought for personal use.

3.  Defendant Arizona RV Centers, LLC (d/b/a "Camping World of Mesa AZ" and/or "Camping Word RV Sales") is a Minnesota corporation.  Arizona RV's agent for service of process is CT Corporation System, 3800 N. Central Avenue, Suite 460, Phoenix, AZ, 85012.

4.  Defendant Thor Motor Coach, Inc., is a Delaware corporation.  Thor's agent for service of process is CT Corporation System, 150 West Market Street, Indianapolis, IN 46204.

**B.  The Facts**

5.  On August 21, 2015, Plaintiff bought a new 44MT Tuscany RV from Arizona RV Centers and Thor, for $282,999.00.  **Exhibit A**, the parties' contract.

6.  As part of the sale, the RV came with Thor's warranty, which was one of the contractual documents in the three-party contract between Plaintiff, Arizona RV Centers, and Thor.

7.  This warranty was the parties' basis of the bargain and a contractual document, thereby establishing privity of contract between Plaintiff and Thor.

8.  The relevant portion of the warranty is attached hereto as **Exhibit B**.

9.   Under the warranty contract between Plaintiff and Thor, Thor Motor Sales attempted to disclaim incidental and consequential damages.

10.  After the purchase, Plaintiff discovered that the RV was not "new," because, on information and belief, Arizona RV used the RV as a demo in RV shows.  Additionally, on information and belief, Arizona RV damaged the front end of the RV, resulting in body misalignment and paint issues (including "orange peel," indicating prior repair), and making the RV not "new."

11.  After the purchase, Plaintiff discovered that Arizona RV failed to inspect the RV, even though it charged him for it.

12.  Had Arizona RV inspected the RV, if would have discovered a severe rust problem on RV's frame rails and chassis and coach frame, and Plaintiff would have not bought it.

13.  When Plaintiff asked Thor to repair the rust under its warranty, Thor refused.

14.  In addition to selling him an RV with rusted frame rails, chassis, and coach frame, Thor also extended the frame rails, making the frame structurally unsound.  The frame rails defect was caused by Thor's bad workmanship and materials, insofar as, on information and belief, Thor worked on the frame rails by cutting them (thereby weakening the steel), inserting additional railing, inappropriate for this type of frame rails as an extension, and failing to weld the inserts correctly (Plaintiff complained to Thor on September 25, 2016, about "poor welding job"), thereby allowing frame rails to flex and/or move excessively.  On information and belief, the coach frame defect was caused either by leaving the component parts of the frame outside  subject to the outside elements without protection, or by defective materials.

15.   Plaintiff brought to Thor's attention cracks in RV's roof, which, on information and belief, occurred because of excessive flexing and movement of the RV's structure, on information and belief caused by either the chassis frame extension, or by improper attachment of the coach frame to the chassis, or by poor assembly of the coach frame itself.  Thor deceptively attempted to conceal this lack of structural integrity of the RV and defective materials used in making the roof, by minimizing the problem and merely painting over the cracks.  The roof defect occurred because Thor made the roof with defective materials, given that Thor designed the roof not to crack.

16.   Thor breached its warranty contract by being unable to repair the RV, by refusing to repair it, and by making "sham" repairs (such as merely painting over the roof cracks).  Both Defendants breached their implied warranties by selling an unmerchantable RV, which is not "new," has a massive rust problem (caused by using defective materials, such as rusted-out frame rails), and has structural issues (on information and belief, due to the unworkman-like extension of the chassis frame rails by Thor).  Within a month of the purchase, Plaintiff revoked his acceptance and cancelled his contract.

17.   Because Thor failed to repair or replace the RV within a reasonable time, Plaintiff did not receive the benefit of the bargain—a non-defective RV—and the limited remedy of replacement or repair of defective parts of the RV failed its essential purpose, allowing Plaintiff to recover incidental and consequential damages under section 26-1-2-719 of the Indiana Commercial Code, because the exclusion was unconscionable.

18.   As a result of Thor's actions, the RV is and remains un-repaired.

## II.  CAUSES OF ACTION

### Count I—Magnuson-Moss Warranty Act:  Breach of the Implied Warranty of Merchantability, Equitable and Legal Relief, Against Thor[1]

19.   Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

20.   Thor is a merchant with respect to car, such as the RV sold to Plaintiff.

21.   An implied warranty that the RV was merchantable arose by operation of law as part of the sale, because the RV came with a Thor express warranty, and, by virtue of giving Plaintiff a warranty and by virtue of its attempt to disclaim incidental and consequential damages, Thor was in privity of contract with Plaintiff.

---

[1] Count I was dismissed by the Court on August 21, 2017.  Plaintiff re-pleads Count I solely to preserve his appellate rights.  Plaintiff was unable to ascertain the state of the current Seventh Circuit law on the necessity of re-pleading previously dismissed claims in order not to waive them for purposes of appeal. Relatively recent cases from other circuits state this is not necessary.  In re Crysen/Montenay Energy Co., 226 F.3d 160, 162-65 (2d Cir. 2000).  Given this uncertainty, Plaintiff takes a safer course.

22.  Section 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part:

a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

(A) in any court of competent jurisdiction ***.

23.  As described above, the RV is defective and unmerchantable, in that it had multiple defects, such as rusted out frame and chassis, and structural infirmities due to extension of the chassis by Thor.  In addition, it was unmerchantable because it was not "new."  Such defects existed when the RV left Thor's control.

24.  Because the RV was not in a merchantable condition when sold, in that, among others, it was not fit for the ordinary purposes for which such goods are used, and would not pass in trade under the contract description, Thor breached the implied warranty of merchantability.

25.  Plaintiff notified Thor of the defects in the RV within a reasonable time after Plaintiff discovered the breach.

26.  As a result of Thor's breach of the implied warranty of merchantability, Plaintiff suffered damages.

27.  Thor's breach of the implied warranty of merchantability constitutes a violation of 15 U.S.C. §2310(d).

**WHEREFORE**, Plaintiff requests that the Court:

A.  Grant him equitable relief and confirm Plaintiff's justifiable revocation of acceptance and cancellation of the contract with Thor, and order the return of all of Plaintiff's money, cancellation of his finance contract, and further award Plaintiff damages to which Plaintiff is entitled, including loss of use and punitive damages;

B.  Or, in the alternative, award Plaintiff damages in the amount of the entire purchase price under 26-1-1-102(a) and 26-1-2-714(b) ("circumstances indicating otherwise") of the Indiana Commercial Code;

C.  Or, in the alternative, award Plaintiff the diminished value damages under 26-1-2-714(b);

D.  Award Plaintiff expenses of litigation and costs;

E.  Award Plaintiff's attorneys their fees; and,

F.  Grant Plaintiff other relief the Court deems appropriate and just.

4

**Count II—Magnuson-Moss Warranty Act:  Breach of Express Warranty, Against Thor**

28.  Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

29.  The vehicle described above is a "consumer product," as defined by the Act, because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.  15 U.S.C. §2301(1).

30.  Plaintiff is a natural person.

31.  Plaintiff is a "consumer," as defined in the Act.  15 U.S.C. §2301(3).

32.  Thor is a "supplier" and "warrantor," as defined in the Act.  15 U.S.C. §2301(4) and (5).

33.  The manufacturer's warranty described in paragraph 8 is a "written warranty," as defined in the Act.  15 U.S.C. §2301(6).

34.  Section 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part:

a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

(A) in any court of competent jurisdiction ***.

35.  Plaintiff's purchase of the RV was induced by Thor.

36.  As described above, the RV is defective, either with respect to materials or workmanship, and, as evident from the rusted out frame and chassis and structural issues that arose because of Thor's extension of the chassis, and such defects existed when it left Thor.

37.  Because Thor was unable to, refused to repair the RV, or performed "sham" repairs, Thor breached the express warranty.

38.  Plaintiff notified Thor of the defects in the RV within a reasonable time after Plaintiff discovered the breach.  Plaintiff complied with all of Thor's warranty terms, including Thor's back up remedy, as follows:

a.  Plaintiff brought the RV to Thor three (3) times, giving Thor multiple opportunities to repair the defects, and Thor was either unable to repair them, or

5

(as in the case of rust) simply refused to repair them, or (as in the case of cracked roof) performed deceptive "sham" repairs; and,

b.  With respect Thor's back-up remedy, Plaintiff alleges "incurable" defects. These incurable defects include the rust, frame rail extension, and roof cracks. These defects are incurable, because to "repair" them would mean scrapping the entire RV, á la Vietnam-era adage of "we had to destroy the village in order to save it."  In accordance with Thor's back-up remedy provision, Plaintiff, on October 29, 2017, in writing requested that Thor pay him his diminution of value damages.  On November 1, 2017, Thor refused Plaintiff's request.  By making a pre-suit demand for diminished value damages occasioned by incurable defects, Plaintiff complied with Thor's back-up remedy.

39.  By not repairing the RV under the terms of its warranty, by refusing the RV under the terms of its warranty, and by actually covering up warranty issues by making sham repairs (as in the case of the roof cracks), Thor breached its obligations under its warranty.  Thor's breach of the express warranty constitutes a violation of 15 U.S.C. §2310(d).

**WHEREFORE**, Plaintiff requests that the Court:

A.  Grant him equitable relief and confirm Plaintiff's justifiable revocation of acceptance and cancellation of the contract with Thor, and order the return of all of Plaintiff's money, cancellation of his finance contract, and further award Plaintiff damages to which Plaintiff is entitled, including loss of use and punitive damages;

B.  Or, in the alternative, award Plaintiff damages in the amount of the entire purchase price under 26-1-1-102(a) and 26-1-2-714(b) ("circumstances indicating otherwise") of the Indiana Commercial Code;

C.  Or, in the alternative, award Plaintiff the diminished value damages under 26-1-2-714(b);

D.  Award Plaintiff expenses of litigation and costs;

E.  Award Plaintiff's attorneys their fees; and,

F.  Grant Plaintiff other relief the Court deems appropriate and just.

**Count III—Indiana Deceptive Consumer Sales Act (§24-5-0.5-3), Against Thor**

40.  Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

41.  As described above, Thor sold Plaintiff an RV that had a rusted out frame and chassis, which was structurally unsound because of its extension.  Under Indiana Deceptive Consumer Sales Act, Plaintiff gave Thor notice in writing on October 29, 2017.

42.  Thor concealed these problems with the RV both pre- and post-sale.  Moreover, when Plaintiff brought to Thor's attention cracks on the roof (on information, due to the excessive flexing caused by the extended frame rails, or because of the improper attachment of the coach frame, or because of improper assembly of the coach frame), Thor, in violation of its obligations, refused to acknowledge the problem, and slapped on gel coat to hide the cracks.  When Plaintiff later sanded the roof, he found out that, in fact, the roof fiberglass was cracked.  Thor also attempted to cover up the rust problem on the interior of the RV by painting over it and also falsely blaming the corrosion on road salt.  Specifically:

a.  **Who**:  Defendant Thor, by its employees, names unknown at this time;

b.  **What**:  Concealment of two defects:  (1) cracks on the roof; (2) frame rust;

c.  **When**:  June of 2016 for (1); October of 2015 for (2);

d.  **Where**:  (1) Thor's repair facility, Wakarusa, Indiana; (2) Arizona RV sales lot, Mesa, AZ.

e.  **How**:  (1) By slapping on a gel coat to hide the cracks; (2) by painting over rust and by verbally falsely attributing the corrosion to road salt, when, in fact, the chassis, frame rails, and coach frame were rusted out on Thor's lot, pre-assembly, because, on information and belief, Thor left them to rust there and consequently used these defective materials in assembling the RV.

43.  This concealment was an unfair and deceptive act or practice in violation of the Act.

**WHEREFORE**, Plaintiff requests that the Court:

A.  Award Plaintiff damages to which he is entitled;

B.  Award Plaintiff expenses of litigation and costs;

C.  Award Plaintiff's attorneys their fees; and,

D.  Grant Plaintiff other relief the Court deems appropriate and just.

### Count IV—Magnuson-Moss Warranty Act:  Breach of the Implied Warranty of Merchantability, Equitable and Legal Relief, Against Arizona RV

44.  Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

45.  Even though Arizona RV attempted to disclaim implied warranties, its disclaimer was in effective, because it was not conspicuous.  **Exhibit A**, p. 2.

46.  Alternatively, Arizona's RV attempted disclaimer of implied warranties was ineffective because it "entered into" a service contract with Plaintiff, and, under Section 2308(a) it could not disclaim implied warranties as a matter of law.  **Exhibit C**, p. 2 ("In the event of a

Mechanical Breakdown, take the Unit to the dealer that sold You this Agreement, if at all possible.")

47.  Section 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part:

a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

(A) in any court of competent jurisdiction ***.

48.  As described above, the RV is defective and unmerchantable, in that it had multiple defects, such as rusted out frame rails, chassis, and coach frame, unrepairable mirrors, and structural integrity was compromised due to extension of the frame rails by Thor.  In addition, it was unmerchantable because it was not "new."  Such defects existed when the RV left Thor's control.

49.  Because the RV was not in a merchantable condition when sold, in that, among others, it was not fit for the ordinary purposes for which such goods are used, and would not pass in trade under the contract description, Thor breached the implied warranty of merchantability.

50.  Plaintiff notified Arizona RV of the defects in the RV within a reasonable time after Plaintiff discovered the breach, and gave Arizona RV an opportunity to repair the defects. However, Arizona RV either failed to repair them, or refused to repair them.

51.  As a result of Arizona RV's breach of the implied warranty of merchantability, Plaintiff suffered damages.

52.  Arizona RV's breach of the implied warranty of merchantability constitutes a violation of 15 U.S.C. §2310(d).

**WHEREFORE**, Plaintiff requests that the Court:

A.  Grant him equitable relief and confirm Plaintiff's justifiable revocation of acceptance and cancellation of the contract with Arizona RV, and order the return of all of Plaintiff's money, cancellation of his finance contract, and further award Plaintiff damages to which Plaintiff is entitled, including loss of use and punitive damages;

B.  Or, in the alternative, award Plaintiff damages in the amount of the entire purchase price under §§47-130(a) and 47-2714(b) ("circumstances indicating otherwise") of the Arizona Commercial Code;

C.  Or, in the alternative, award Plaintiff the diminished value damages under §47-2714(b);

8

D.  Award Plaintiff expenses of litigation and costs;

E.  Award Plaintiff's attorneys their fees; and,

F.  Grant Plaintiff other relief the Court deems appropriate and just.

**Count V— Revocation of Acceptance, Cancellation of Contract under Arizona Commercial Code (§§47-2608 and 46-2711, Arizona Revised Statutes), Against Arizona RV**

53.  Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

54.  Because the RV was not "new," because it had a rusted-out frame and chassis, and because, on information and belief, its structural integrity was compromised, and because, on information and belief, it sustained undisclosed pre-sale damage to its right front end, its value was substantially impaired to Plaintiff.

55.  Plaintiff revoked his acceptance and canceled his contract within a month after the purchase.

56.  Arizona RV refused to return his money and cancel the sale.

57.  Unable to buy replacement goods, Plaintiff continued to use the RV in mitigation of his damages.

58.  The RV is in the same condition as at sale, except for the defects that existed at the time of the sale (i.e., rusted out frame and chassis, and the problem with its structural integrity due to the extension of the frame).

59.  Revocation of acceptance and cancellation of contract are UCC self-help remedies.

60.  Because the value of the RV is substantially impaired to Plaintiff, he was justified in revoking his acceptance and canceling his contract with Arizona RV.

**WHEREFORE**, Plaintiff requests that the Court:

A.  Confirm Plaintiff's justifiable revocation of acceptance and cancellation of the contract with Arizona RV, and order the return of all of Plaintiff's money, cancellation of his finance contract, and further award Plaintiff damages to which Plaintiff is entitled;

B.  Award Plaintiff expenses of litigation and costs; and,

C.  Grant Plaintiff other relief the Court deems appropriate and just.

**Count VI— Arizona Consumer Fraud Act (§44-1522, Arizona Revised Statutes), Against Arizona RV**

61.  Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

62.  As described above, Arizona RV sold Plaintiff an RV that was not "new" (on information and belief Defendant used it as a "demo" for RV shows).

63.  As described above, Arizona RV charged Plaintiff an inspection fee and did no inspection.  Plaintiff learned about this fact sometime after November 26, 2015, when he received a phone call from Shawn Williams, former General Manager of Arizona RV, during which Mr. Williams (who was trying to get Plaintiff to agree to invent in his new RV dealership) disclosed to Plaintiff that the inspection had not been performed, and that the Arizona RV employee responsible for this was fired.  During the same phone call, some time after November 26, 2015, Mr. Williams informed Plaintiff that the supposedly "new" RV was used as a demonstrator at the Phoenix Speedway.

64.  If Arizona RV had done the inspection, it would have discovered the rust problem, and should have informed Plaintiff, given that Plaintiff paid $1,200 for the inspection.  Alternatively, if Arizona RV did not do the inspection, this means it stole $1,200 from Plaintiff.

65.  Arizona RV also failed to tell Plaintiff that the supposedly "new" RV had its frame rails extended by the manufacturer, which made the RV structurally unsound.  Plaintiff first learned about this defect on or about September 25, 2016, when he surmised that the RV must have been wrecked by Arizona RV.  It is only after October 1, 2016, when, being fed up with his inability to have the RV fixed under its warranties, he hired an expert to inspect the RV for multiple problems, and received the expert's report, that Plaintiff learned that the frame rails were extended.  In addition, on information and believe, the RV was involved in a pre-sale accident, that damaged its front end, resulting in structural misalignment of its body and paint issues (including "orange peel" condition).  Arizona RV did not tell Plaintiff about this pre-sale damage.

66.  These misrepresentations, concealments, omissions, and suppressions of material facts were unfair and deceptive acts or practices in violation of the Act.

**WHEREFORE**, Plaintiff requests that the Court:

A.  Award Plaintiff damages to which he is entitled;

B.  Award Plaintiff expenses of litigation and costs;

C.  Award Plaintiff's attorneys their fees; and,

D.  Grant Plaintiff other relief the Court deems appropriate and just.

**KEVIN REGER**


By:    /s/ Dmitry Feofanov  
       One of Plaintiff's Attorneys


Dmitry N. Feofanov
**CHICAGOLEMONLAW.COM, P.C.**
404 Fourth Avenue West
Lyndon, IL  61261
815/986-7303

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CAMPING WORLD OF MESA AZ<br>2222 E MAIN ST<br>MESA, AZ 85213 | KEVIN W REGER<br>2333 8TH ST<br>PERU, IL 61354 | No. | 1171999 |
| | | Date | 08/20/2015 |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$ 56,000.00 |
|---|---|---|---|---|
| 4.74 % | $ 131,753.78 | $ 239,715.82 | $ 371,469.60 | $ 427,469.60 |

Payment Schedule. Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 240 | $ 1,547.79 | Monthly, beginning on 9/19/2015 . |
| N/A | $ N/A | NOT APPLICABLE |
| N/A | $ N/A | NOT APPLICABLE |

Security. You are giving us a security interest in the Property purchased.

Late Charge. If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.

Prepayment. If you pay off this Contract early, you will not have to pay a penalty.

Contract Provisions. You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Arizona Used Motor Vehicle Warranty

This section applies to used vehicles only. **The Seller hereby warrants that this Vehicle will be fit for the ordinary purposes for which the Vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the purchaser) will have to pay $25.00 for each of the first two repairs if the warranty is violated.**

Attention Purchaser. Sign here only if the dealer told you that this Vehicle has the following problem(s) and that you agree to buy the Vehicle on those terms:

1. N/A
2. N/A
3. N/A

N/A

By:   KEVIN W REGER                    08/20/2015
                                        Date

N/A

By:   N/A                              N/A
                                        Date

N/A

By:   N/A                              N/A
                                        Date

Customers Initial Here

Ex, A

## Warranties

Unless the Seller makes a written warranty or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the Vehicle, except as described above for used vehicles. Making no warranties means that the Seller is selling the Vehicle as is - not expressly warranted or guaranteed and without implied warranties of merchantability (except as described above) or fitness for a particular purpose. This provision does not affect any warranties covering the Vehicle that the Vehicle manufacturer may provide.

## Description of Property

| Year | Make | Model | Style | | Odometer Mileage |
|------|------|-------|-------|---|------------------|
| 2015 | THOR MOTOR COACH | 44MT TUSCANY | ClassA | | 2053 |

[X] New
[ ] Used
[ ] Demo

2015 THOR MOTOR COACH 44MT TUSCANY

*↑*
*Not Conspicuous*

## Description of Trade-In

2005 FLEETWOOD 38N
[4UZAAHDC85CU93061]

## Conditional Delivery

[ ] Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("Agreement") applies:   N/A

N/A   . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

Payment. You promise to pay us the principal amount of $ 239,715.82   plus finance charges accruing on the unpaid balance at the rate of   4.74   % per year from the date of this Contract until maturity. Finance charges accrue on a Actual/365   day basis. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at   4.74   % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

Down Payment. You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

[ ] You agree to make deferred down payments as set forth in your Payment Schedule.

*[This area intentionally left blank.]*

| | | |
|---|---|---|
| a. **Cash Price** of Vehicle, etc. (incl. sales tax of $ 0.00 ) | $ | 284,789.00 |
| b. Trade-in allowance | $ | 70,000.00 |
| c. Less: Amount owing, paid to (includes k): BANK OF THE WEST | $ | 71,078.82 |
| d. Net trade-in (b-c; if negative, enter $0 here and enter the amount on line k) | $ | 0.00 |
| e. Cash payment | $ | 56,000.00 |
| f. Manufacturer's rebate | $ | 0.00 |
| g. Deferred down payment | $ | 0.00 |
| h. Other down payment (describe) N/A | $ | 0.00 |
| i. **Down Payment** (d+e+f+g+h) | $ | 56,000.00 |
| j. **Unpaid balance of Cash Price** (a-i) | $ | 228,789.00 |
| k. Financed trade-in balance (see line d) | $ | 1,078.82 |
| l. Paid to public officials, including filing fees | $ | 24.00 |
| m. Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| n. Service Contract, paid to: Assurant | $ | 8,200.00 |
| o. Paint Protection paid to Metrotech | $ | 1,225.00 |
| p. Documentation Fee paid to Seller | $ | 399.00 |
| q. N/A | $ | 0.00 |
| r. N/A | $ | 0.00 |
| s. N/A | $ | 0.00 |
| t. N/A | $ | 0.00 |
| u. N/A | $ | 0.00 |
| v. Total Other Charges/Amts Paid (k thru u) | $ | 10,926.82 |
| w. Prepaid Finance Charge | $ | 0.00 |
| x. Amount Financed (j+v-w) | $ | 239,715.82 |

We may retain or receive a portion of any amounts paid to others.

Broker Fee. [ ] If this box is checked, this Contract is subject to a broker fee paid by the Seller to   N/A
N/A   .

Retail Installment Contract-AZ Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

JESSIM LL AZ-AZ 8/8/2012
Page 2 of 5
Customers Initial Here

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**
☐ Single  ☐ Joint  ☒ None
Premium $ 0.00                              Term N/A
Insured N/A

**Credit Disability**
☐ Single  ☐ Joint  ☒ None
Premium $ 0.00                              Term N/A
Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: KEVIN W REGER                    05/14/1961
                                      DOB

By: N/A                              N/A
                                      DOB

By: N/A                              N/A
                                      DOB

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ 1,000.00 . If you get insurance from or through us you will pay $ 0.00 for N/A of coverage.

This premium is calculated as follows:
☐ $ 0.00 Deductible, Collision Cov. $ 0.00
☐ $ 0.00 Deductible, Comprehensive $ 0.00
☐ Fire-Theft and Combined Additional Cov. $ 0.00
☐ N/A                                    $ 0.00

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ 0.00 for N/A of coverage.

*[This area intentionally left blank.]*

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**
Term             84 months
Price            $ 8,200.00
Coverage         as per Vehicle Service Contract

☐ **Gap Waiver or Gap Coverage**
Term             N/A
Price            $ 0.00
Coverage         N/A

☒ **Paint Protection**
Term             60 months
Price            $ 1,225.00
Coverage         as per Paint Protection Contract

By: KEVIN W REGER                    08/20/2015
                                      Date

By: N/A                              N/A
                                      Date

By: N/A                              N/A
                                      Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from us, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

Retail Installment Contract-AZ Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

RESIMVI-FLZAZ 6/8/2012
Page 3 of 5

Customers Initial Here

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of not more than $25.00 plus any actual charges assessed by the financial institution of the holder, payee or assignee of the holder or payee as a result of the dishonored instrument.

**Governing Law and Interpretation.** This Contract is governed by the law of Arizona and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- You fail to perform any obligation that you have undertaken in this Contract.
- We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

Unless prohibited by law, if you default, you agree to pay a reasonable amount for our cost of collection, our legal expenses and reasonable attorneys' fees if we refer this Contract to an attorney not a salaried employee of ours, and court costs.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses of repossessing, storing, preparing for sale and selling the Property and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**NOTICE.** The following information applies if this Contract is secured by a motor vehicle, as that term may be defined by applicable Arizona law:

It is unlawful to fail to return a motor vehicle subject to a security interest within thirty days after receiving notice of default. Any notice of default we send you will be mailed to your

address on this Contract. It is your responsibility to tell us your new address if it changes. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony which for a first offense carries a maximum jail sentence of 1.5 years. The maximum jail sentence may be greater if there are aggravating circumstances or you have a prior criminal record. The court may also impose a fine of no more than $150,000.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** In addition to the information provided in the *Arizona Used Motor Vehicle Warranty* section of this Contract, warranty information may be provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

Retail Installment Contract-AZ Not for use in transactions secured by a dwelling.
Bankers Systems™
Wolters Kluwer Financial Services © 1995, 2010

RSSIMVIFLZAZ 6/8/2012
Page 4 of 5
Customers Initial Here

## Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Si compra un vehiculo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the Description of Property section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

NOT APPLICABLE

|  | | N/A |
|---|---|---|
| By: | NOT APPLICABLE | Date |

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

|  | | 08/20/2015 |
|---|---|---|
| By: | KEVIN W REGER | Date |
|  | | N/A |
| By: | N/A | Date |
|  | | N/A |
| By: | N/A | Date |

Notice to the Buyer. 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract you sign.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

THE INSURANCE SHOWN IN THE INSURANCE DISCLOSURES SECTION OF THIS CONTRACT DOES NOT INCLUDE LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS UNLESS SUCH INSURANCE IS SPECIFICALLY PROVIDED FOR IN THAT SECTION.

Buyer

|  | | 08/20/2015 |
|---|---|---|
| By: | KEVIN W REGER | Date |
|  | | N/A |
| By: | N/A | Date |
|  | | N/A |
| Seller | | Date |
|  | | 08/20/2015 |
| By: | CAMPING WORLD OF MESA AZ | Date |

We are regulated by the Arizona Department of Financial Institutions. Any complaints you have concerning this Contract may be addressed to the Arizona Department of Financial Institutions, 2910 North 44th Street, Suite 310, Phoenix, Arizona 85018; Telephone (602) 255-4421.

Assignment. This Contract and Security Agreement is assigned to BANK OF THE WEST, PO Box 2497, Omaha, NE 68103 , the Assignee, phone 800-843-2327 . This assignment is made under the terms of a separate agreement made between the Seller and Assignee. ☐ This Assignment is made with recourse.

Seller

|  | | 08/20/2015 |
|---|---|---|
| By: | CAMPING WORLD OF MESA AZ | Date |

Customers Initial Here

# Warranty

THOR MOTOR COACH'S LIMITED WARRANTY

**THIS LIMITED WARRANTY COVERS:** The limited motor home used for retail purposes or sold or registered outside of the United States or Canada. THOR MOTOR COACH ("TMC") warrants the motorhome under the section "What is Not Covered" which are excluded from coverage under this limited warranty. There are no express warranties other than THOSE PORTIONS OF THE MOTORHOME EXCLUDED UNDER THE SECTION "What is Not Covered." "Defect" means the failure of the workmanship performed and/or materials used to conform to the design and manufacturing specification and tolerances of Thor Motor Coach ("TMC"). This Limited Warranty is not transferable.

**WHAT IS NOT COVERED:** Any motorhome used for rental purposes or sold or registered outside of the United States or Canada. The following...

**COVERAGE ENDS:** 12 months after you first take delivery of your motorhome from an authorized dealership OR after the odometer reaches 15,000 miles, whichever occurs first. ANY ACTION FOR BREACH OF THIS LIMITED WARRANTIES MUST BE COMMENCED NOT MORE THAN 15 MONTHS AFTER YOU FIRST TAKE DELIVERY OF YOUR MOTORHOME.

**STRUCTURAL (SIDEWALL/SLAB-OUT) COVERAGE ENDS:** The limited warranty covering the sidewall or aluminum frame structure ONLY of the motorhome... ANY ACTION FOR BREACH OF THE STRUCTURE MUST BE COMMENCED NOT MORE THAN 27 MONTHS AFTER YOU FIRST TAKE DELIVERY OF YOUR MOTORHOME.

**REPAIR REMEDY:** Thor Motor Coach's sole and exclusive obligation is to repair any covered defects discovered within the warranty coverage period if: (1) within 10 days of your discovery of a defect you notify TMC OR an authorized dealership at your cost and expense.

**BACKUP REMEDY:** If the primary repair remedy fails to successfully cure any defect after a reasonable number of repair attempts, your sole and exclusive remedy shall be to have Thor Motor Coach pay an independent service shop of your choice to perform repairs to the defect OR if the defect is incurable, have TMC pay diminution in value damages. THIS LIMITED WARRANTY IS NOT A WARRANTY THAT PROMISES OR EXTENDS TO FUTURE PERFORMANCE BECAUSE THE WARRANTY ONLY REPRESENTS AND REPRESENTATION ON HOW YOUR MOTORHOME WILL PERFORM IN THE FUTURE BUT INSTEAD REPRESENTS ONLY THAT THE REMEDY WILL BE IF A DEFECT EXISTS. THIS MEANS ANY BREACH OF ANY WARRANTY, EXPRESS OR IMPLIED, OCCURS ON THE DATE OF DELIVERY/PURCHASE.

**HOW TO GET SERVICE:** If you need assistance in locating an authorized warranty service facility, contact Warrantor's Warranty Department at (574) 825-2691. The Thor Motor Coach's sole and exclusive address is: P.O. Box 1486, Elkhart, Indiana 46515-1486. The motorhome is to be returned to TMC... Failure to return the "Acknowledgement of Receipt of Warranty/Product Information" form will not affect your rights under this Limited Warranty so long as you can furnish proof of purchase. For warranty service simply contact an authorized warranty service facility for an appointment, then deliver your motorhome (at your expense) to the authorized warranty service facility.

**EVENTS THAT DISCHARGE THOR MOTOR COACH'S OBLIGATIONS UNDER WARRANTY:** Transfer of the Warranty, misuse or neglect, accidents, unauthorized alteration, failure to provide reasonable and necessary maintenance (see Owner's Manual), damage caused by off road use, collision, fire, theft, vandalism, explosions, overloading in excess of rated capacities, and odometer tampering shall discharge Warrantor from any express or implied warranty obligation to repair any existing defect.

**DISCLAIMER OF CONSEQUENTIAL AND INCIDENTAL DAMAGES:** YOU, AS THE FIRST RETAIL BUYER OF THE MOTORHOME, AND ANY PERSON TO WHOM THE MOTORHOME IS TRANSFERRED, AND ANY PERSONS WHO ARE AN INTENDED OR UNINTENDED USER OR BENEFICIARY OF THE MOTORHOME, SHALL NOT BE ENTITLED TO RECOVER FROM TMC ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES AS A RESULT OF ANY DEFECT OR BREACH OF ANY EXPRESS OR IMPLIED WARRANTY ON THE MOTORHOME. SUCH AS MOLD AND/OR ANY OTHER CONSEQUENTIAL AND INCIDENTAL DAMAGES SHALL NOT BE DEPENDENT UPON WARRANTY REPAIRS SUCCESSFULLY CORRECTING ANY DEFECT. THE EXCLUSION OF CONSEQUENTIAL AND INCIDENTAL DAMAGES SHALL SURVIVE ANY FAILURE OF THE LIMITED WARRANTY REMEDIES FULFILLING THEIR PURPOSE. Some states do not allow the exclusion or limitation of consequential or incidental damages, so the above exclusions may not apply to you.

**LEGAL REMEDIES:** ANY LEGAL ACTION TO ENFORCE WARRANTY RIGHTS AGAINST TMC MUST BE BROUGHT WITHIN THE COUNTY OF ELKHART, STATE OF INDIANA. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

Before I purchased my motorhome, I received, read and agreed to the terms and conditions of this Limited Warranty. I understand and agree that the selling dealership is not an agent for Thor Motor Coach but is an independent entity. I understand and acknowledge that the chassis and components and appliances that are covered by a warranty issued by their manufacturer are excluded from coverage under the terms of this Limited Warranty. I acknowledge and agree that, before purchasing my motorhome, I inspected or was given the opportunity to inspect my motorhome, took a test drive of my motorhome and disclosed in writing to the selling dealership all defects and damage that I discovered during my test drive.

**LIMITATION AND DISCLAIMER OF IMPLIED WARRANTIES:** THE DURATION OF THE IMPLIED WARRANTY OF MERCHANTABILITY WHICH MAY ARISE BY OPERATION OF STATE LAW IS LIMITED TO THE DURATION OF THE LIMITED WARRANTY AND IS LIMITED IN SCOPE OF COVERAGE TO THOSE PORTIONS OF YOUR MOTORHOME COVERED BY THIS LIMITED WARRANTY. THERE ARE NO EXPRESS WARRANTIES OR ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE beyond those expressly set forth in this Limited Warranty. Some states do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply to you.

Odometer Reading: _____

Purchase Signature _____   Date _____

Purchase Signature _____   Date _____

Julian Date: 10/13/14

Ex. B

9



**Good Sam**
**Extended Service Plan** vsc

**Motor Home**
**Service Agreement Declaration Page**

SERVICE AGREEMENT NUMBER
80303000

## AGREEMENT HOLDER INFORMATION

| FIRST NAME | LAST NAME | MI | TELEPHONE NUMBER |
|---|---|---|---|
| KEVIN | REGER | | (408) 614-0126 |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2333 8TH ST | PERU | IL | 60487 |

## UNIT DESCRIPTION

☑ MOTOR HOME ☐ COACH ONLY ☐ POST SALE

| YEAR | MAKE | MODEL | ODOMETER READING | ORIGINAL OWNER |
|---|---|---|---|---|
| 2015 | THOR MOTOR COACH | Tuscany 44MT | 2053 | ☑ Yes ☐ No |

| CHASSIS VIN | CHASSIS WARRANTY TERM | UNIT IN-SERVICE DATE | AGREEMENT PURCHASE DATE |
|---|---|---|---|
| 4UZFCHCY5FCGT3763 | 36/50000 | 8/20/2015 | 8/20/2015 |

| COACH/UNIT VIN | MANUFACTURER'S WARRANTY TERM | UNIT PURCHASE PRICE | SINGLE PAYMENT AGREEMENT PURCHASE PRICE |
|---|---|---|---|
| 4UZFCHCY5FCGT3763 | 12/15000 | $284,294.00 | $8,200.00 |

## PLAN/TYPE OF COVERAGE INFORMATION

☑ New Unit Plan    ☐ Pre-Owned Unit Plan

☑ Chassis & Coach
☐ Coach Only
☐ Powertrain Wrap (New Only)

| TERM (MONTHS/MILEAGE IF APPLICABLE) | RATE CLASS | BASE CODE | PAYMENT PLAN |
|---|---|---|---|
| 84 / 75000 | F | 1559 | ☐ Yes  ☑ No |

☑ $100 DEDUCTIBLE    ☐ OTHER _____ DEDUCTIBLE
In the event the Dealer that sold YOU this AGREEMENT or any other Camping World Service Center performs the covered repairs,
The DEDUCTIBLE will be reduced by fifty dollars ($50).

## SURCHARGES AND OPTIONAL COVERAGE

REQUIRED SURCHARGES                      OPTIONAL COVERAGE (Surcharges Apply)

☐ Extended Eligibility (New Motor Home)     ☐ Commercial Use (NEW UNIT Only)
☐ UNIT AGE (Pre-Owned UNITS)                ☐ Navigational Package
                                            ☐ Consequential Loss Coverage

## DEALER/LIENHOLDER INFORMATION

| DEALER NAME | | DEALER NUMBER | |
|---|---|---|---|
| CAMPING WORLD RV SALES - MESA | | 8049 | |

| ADDRESS | CITY | STATE | ZIP CODE | DEALER TELEPHONE NUMBER |
|---|---|---|---|---|
| 2222 EAST MAIN STREET, | MESA | AZ | 8521300□ | (480) 964-6616 |

| LIENHOLDER NAME |
|---|
| BANK OF THE WEST |

| ADDRESS | CITY | STATE | ZIP CODE | LIENHOLDER TELEPHONE NUMBER |
|---|---|---|---|---|
| PO BOX 2497, | OMAHA | NE | 68103-24 | (800) 843-2327 |

## OTHER PROVISIONS

The ADMINISTRATOR of this SERVICE AGREEMENT is United Service Protection Corp., Post Office Box 20899, St. Petersburg, FL 33742. The telephone number is 1-866-769-8097. The OBLIGOR under this SERVICE AGREEMENT, which is referred to as "WE", "US" and "OUR" throughout the SERVICE AGREEMENT, is United Service Protection Corp., the address and telephone number for which are provided above. The ADMINISTRATOR and OBLIGOR may be different depending upon the State in which You reside. Read the SPECIAL STATE DISCLOSURE document to determine if this applies to You.

YOUR SERVICE AGREEMENT contains an arbitration clause which may affect YOUR legal rights, unless YOU live in a state that prohibits such provisions. Please review the arbitration in its entirety as well as the SPECIAL STATE DISCLOSURE document for YOUR specific state (if YOUR state is included) to determine whether YOUR legal rights are affected.

Purchase of this SERVICE AGREEMENT is not required in order to purchase or obtain financing for a UNIT. This SERVICE AGREEMENT is not valid unless this DECLARATION PAGE is completed correctly. This DECLARATION PAGE shall be the basis upon which the SERVICE AGREEMENT is issued. YOUR signature indicates that You have read the information set forth herein and agreed that it is true and correct and that You accept the terms and provisions of this SERVICE AGREEMENT and agree to be bound by the terms thereof.

To review the General Privacy Policy of United Service Protection Corp., an Assurant Solutions company, please visit
http://www.assurantsolutions.com/pri-privacy-notice-t4.html.

## SIGNATURES FOR SERVICE AGREEMENT

| AGREEMENT HOLDER'S SIGNATURE | DATE | DEALER AUTHORIZED SIGNATURE | DATE |
|---|---|---|---|
| X _(signature)_ | 8-20-15 | X _(signature)_ | 8-20-15 |

UC1535-0114                          **CUSTOMER COPY**


Ex-C

judgment, consent decree, or other settlement, and You shall execute and deliver instruments and papers and do whatever is necessary to secure such rights. You shall do nothing to prejudice those rights. Further, all amounts recovered by You for which You have received benefits under this AGREEMENT shall belong to, and be paid to Us, up to the amount of benefits paid under this AGREEMENT.

10.   **Maintenance Requirements and Service History:** You must have YOUR UNIT checked and serviced in accordance with the manufacturer's recommendations, as outlined in the Owner's Manual for YOUR UNIT.

NOTE:   YOUR Owner's Manual lists different servicing recommendations based on YOUR individual driving habits and climate conditions. You are required to follow the normal or severe maintenance schedule that applies to YOUR conditions. Failure to follow the manufacturer's recommendations that apply to YOUR specific conditions may result in the denial of coverage. It is required that You retain "Proof" of maintenance for the service and/or repair work performed on YOUR UNIT, regardless if work was performed by You or a licensed REPAIR FACILITY. "Proof" means repair orders from a licensed REPAIR FACILITY and/or a self-maintained maintenance log that has corresponding "purchase receipts" for oil and filter, coolant and brake system flush, etc. A self-maintained log without corresponding "purchase receipts" is not acceptable "Proof" of maintenance. Repair orders from a licensed REPAIR FACILITY must be readable and understandable, with customer complaint and repair diagnosis, parts, labor hours, UNIT identification number, date, UNIT mileage, YOUR name and signature, licensed REPAIR FACILITY name, address and phone number, repair totals, DEDUCTIBLE(S) (if applicable), and method of payment to satisfy the repair order. The ADMINISTRATOR for related repairs may request "Proof" of maintenance and/or YOUR self-maintained log with corresponding original receipts.

11.   **If the PLAN or term selected is not shown** on the DECLARATION PAGE, the PLAN will be deemed to be the Chassis and Coach PLAN and the Months / Mileage will be deemed to be as follows:
A.   Motor Homes – 36 months / 40,000 miles for NEW UNITS or 12 months / 10,000 miles for PRE-OWNED UNITS;
B.   Coach Only – 36 months for NEW UNITS or 12 months for PRE-OWNED UNITS.

12.   **Other Provisions:** Unless otherwise regulated under state law, the contents of this AGREEMENT should be interpreted and understood within the meaning of a "service contract" in Public ·Law # 93-637. This AGREEMENT is not renewable. OUR obligations under this AGREEMENT are insured by a policy of insurance issued by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157. If WE fail to perform or make payment under the terms of the AGREEMENT within sixty (60) days after proof of loss has been filed, YOU may file a CLAIM directly with the Insurance Company. The telephone number is 1-866-306-6694.

13.   **State Taxes:**  The payment of sales tax on covered repairs will be made in accordance with the regulations of the Taxing Authority in the state where YOUR UNIT is being repaired.

## AGREEMENT HOLDER'S GUIDE TO FILING A CLAIM

1.   **Prevent Further Damage.** Take immediate action. This AGREEMENT will not cover the damage caused by continued operation in a failed state, and/or failing to secure a timely repair of the failed component.
2.   **Take UNIT to a REPAIR FACILITY.** In the event of a MECHANICAL BREAKDOWN, take the UNIT to the dealer that sold You this AGREEMENT, if at all possible. If not, take the UNIT to any licensed REPAIR FACILITY approved by the ADMINISTRATOR. You should contact the ADMINISTRATOR for assistance in locating a REPAIR FACILITY. Provide the REPAIR FACILITY with a copy of this AGREEMENT and/or the AGREEMENT number.
3.   **Obtain Prior Authorization from the ADMINISTRATOR.** Prior to any repair being made, instruct the REPAIR FACILITY to contact the ADMINISTRATOR to obtain authorization for the CLAIM and a CLAIM authorization number. It is YOUR responsibility to ensure that authorization has been obtained

for any covered repair prior to the work being started. Failure to obtain proper authorization will result in a denial of benefits. The amount authorized by the ADMINISTRATOR is the maximum that will be paid for the repairs covered under the terms of this AGREEMENT. Any additional repair costs must receive prior approval. Emergency Repairs: If an emergency occurs which requires a MECHANICAL BREAKDOWN repair to be made at a time when the ADMINISTRATOR'S office is closed and prior authorization for the repair cannot be obtained, the REPAIR FACILITY should follow the CLAIMS procedures below and contact the ADMINISTRATOR for CLAIMS instructions during normal business hours immediately following the emergency repair. **APPROVAL MUST BE OBTAINED IN ALL CASES. FAILURE TO OBTAIN PROPER AUTHORIZATION WILL RESULT IN A DENIAL OF BENEFITS FOR AUTHORIZATION, PLEASE CALL THE** ADMINISTRATOR'S CLAIMS NUMBER 1-866-769-8097.

4.   **Review Coverage.** After the ADMINISTRATOR has been contacted, review with the REPAIR FACILITY what will be covered by this AGREEMENT and what portions of the repair (if any) will not be covered.
5.   **Tear-Down and/or Inspection of the UNIT.** In some cases, You may need to authorize the REPAIR FACILITY to inspect and/or tear-down the UNIT in order to diagnose the failure and the cost of the repair. YOU will be responsible for these charges if the failure is not covered under this AGREEMENT. WE reserve the right to require an inspection of the UNIT prior to any repair being performed.
6.   **Authorize Repair.** Authorize the REPAIR FACILITY to complete the repairs.
7.   **Review Repair.** Review the work performed on the UNIT with the REPAIR FACILITY when the UNIT is picked up.
8.   **Pay DEDUCTIBLE and Costs for Non-Covered Repairs.** WE will reimburse the REPAIR FACILITY or YOU for the cost of the work performed on the UNIT that is covered by this AGREEMENT for the previously authorized amount, less the DEDUCTIBLE. YOU must pay for any repair or service that is not covered by this AGREEMENT. If necessary, WE will pay the REPAIR FACILITY by charge card on YOUR behalf. In some cases, it may be necessary for YOU to pay the repair bill in full. In such event, WE will reimburse YOU for the authorized cost of the repair, less the DEDUCTIBLE.
9.   **Submit Repair Orders for Payment.** Once authorization is obtained and the repair is completed, all repair orders and documentation must be submitted, along with the CLAIM authorization number, to the ADMINISTRATOR, at the address shown below, within thirty (30) days from the date the covered repair was completed to be eligible for payment.

ADMINISTRATOR:
**United Service Protection Corp.
P.O. Box 20899
St. Petersburg, Florida 33742
ATTN: Claims Department
Telephone Number:
1-866-769-8097**

## REPAIR FACILITY'S GUIDE TO FILING A CLAIM

1.   **Advise Agreement Holder.** Advise the AGREEMENT holder that the cost of evaluating the cause of the MECHANICAL BREAKDOWN is covered under this AGREEMENT only if, after the diagnosis is complete, it is determined that the MECHANICAL BREAKDOWN was caused by a COVERED PART. The ADMINISTRATOR must authorize all covered repairs provided under this AGREEMENT.
2.   **Authorization for Evaluation from the Agreement Holder.** Obtain authorization from the AGREEMENT holder to inspect and/or tear-down the UNIT to determine the cause of the failure of the component or part and cost of repair. Save all components including fluids and filters, in the event WE require an inspection. Inform the AGREEMENT holder that the cost of the tear-down will not be paid if the failure of the component disassembled is not covered under this AGREEMENT.
3.   **Assess the Problem(s).** Assess the problem(s), its cause, and the cure of the failure and the cost of the repairs.

**Certificate of Service**

I hereby certify that on September 16, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

All attorneys of record.


s/ Dmitry Feofanov

**CHICAGOLEMONLAW.COM, P.C.**
404 Fourth Avenue West
Lyndon, Illinois  61261
Telephone:  815/986-7303
Email: Feofanov@ChicagoLemonLaw.com

12