UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN REGER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:16-cv-778-JD-MGG |
| ) | |
| ARIZONA RV CENTERS, LLC and ) | |
| THOR MOTOR COACH, INC. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT THOR MOTOR COACH, INC.'S AMENDED ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**

*Answer*

Thor Motor Coach, Inc. ("TMC") by counsel, answers Plaintiff's Second Amended Complaint:

**PRELIMINARY STATEMENT**

This is an action arising out of a purchase of a defective RV. Plaintiff sues for revocation of acceptance, cancellation of his contract, warranty damages, and fraud.

**ANSWER**: TMC denies the allegations contained in this unnumbered paragraph.

**JURISDICTION AND VENUE**

Diversity jurisdiction arises under 28 U.S.C. §1332. Plaintiff is a citizen of Illinois. Arizona RV Centers is a Minnesota corporation, doing business in Arizona. Thor is a Delaware corporation, with its principal place of business in Elkhart County, Indiana. The amount of controversy exceeds $75,000.00.  Under Thor's choice of venue provision in its warranty contract, the action must be brought in Elkhart County, IN.  Alternatively, jurisdiction arises under the Magnuson-Moss Warranty Act, a federal statute, because the amount in controversy in this suit exceeds $50,000.00.  15 U.S.C. §2310(d)(3)(B).

**ANSWER:**  TMC admits Arizona RV Centers is a Minnesota corporation doing business in Arizona and that it is a Delaware corporation with a principal place of business in Elkhart County. TMC further admits that Plaintiff and TMC agreed to litigate any dispute between them in Elkhart County.  TMC denies the amount in controversy in this suit exceeds $50,000.

## I. BACKGROUND

### The Parties

1. Plaintiff Kevin Reger is a natural person.

**ANSWER**:  **TMC admits paragraph 1.**

2. The subject vehicle was bought for personal use.

**ANSWER**:  **TMC is without information or knowledge sufficient to admit or deny the allegations of paragraph 2; proof thereof, if admissible, is requested.**

3. Defendant Arizona RV Centers, LLC (d/b/a "Camping World of Mesa AZ" and/or "Camping Word RV Sales") is a Minnesota corporation.  Arizona RV's agent for service of process is CT Corporation System, 3800 N. Central Avenue, Suite 460, Phoenix, AZ, 85012.

**ANSWER:**  **TMC admits paragraph 3.**

4. Defendant Thor Motor Coach, Inc., is a Delaware corporation.  Thor's agent for service of process is CT Corporation System, 150 West Market Street, Indianapolis, IN 46204.

**ANSWER:**  **TMC admits paragraph 4.**

### The Facts

5. On August 21, 2015, Plaintiff bought a new 44MT Tuscany RV from Arizona RV Centers and Thor, for $282,999.00. Exhibit A, the parties' contract.

**ANSWER: TMC denies paragraph 5.**

6. As part of the sale, the RV came with Thor's warranty, which was one of the contractual documents in the three-party contract between Plaintiff, Arizona RV Centers, and Thor.

**ANSWER: TMC denies paragraph 6.**

7. This warranty was the parties' basis of the bargain and a contractual document, thereby establishing privity of contract between Plaintiff and Thor.

**ANSWER: TMC denies paragraph 7.**

8. The relevant portion of the warranty is attached hereto as Exhibit B.

**ANSWER: TMC admits that a copy of its Limited Warranty is attached to Plaintiff's Complaint. TMC denies the remainder of paragraph 8.**

9. Under the warranty contract between Plaintiff and Thor, Thor Motor Sales attempted to disclaim incidental and consequential damages.

**ANSWER: TMC denies paragraph 9.  Such damages were, in fact, disclaimed.**

10. After the purchase, Plaintiff discovered that the RV was not "new," because, on information and belief, Arizona RV used the RV as a demo in RV shows. Additionally, on information and belief, Arizona RV damaged the front end of the RV, resulting in body misalignment and paint issues (including "orange peel," indicating prior repair), and making the RV not "new."

**ANSWER: TMC denies paragraph 10.**

11. After the purchase, Plaintiff discovered that Arizona RV failed to inspect the RV, even though it charged him for it.

**ANSWER: TMC is without information or knowledge sufficient to admit or deny the allegations of paragraph 11; proof thereof, if admissible, is requested.**

12. Had Arizona RV inspected the RV, if would have discovered a severe rust problem on RV's frame rails and chassis and coach frame, and Plaintiff would have not bought it.

**ANSWER: TMC denies paragraph 12.**

13. When Plaintiff asked Thor to repair the rust under its warranty, Thor refused.

**ANSWER: TMC denies paragraph 13.**

14. In addition to selling him an RV with rusted frame rails, chassis, and coach frame, Thor also extended the frame rails, making the frame structurally unsound. The frame rails defect was caused by Thor's bad workmanship and materials, insofar as, on information and belief, Thor worked on the frame rails by cutting them (thereby weakening the steel), inserting additional railing, inappropriate for this type of frame rails as an extension, and failing to weld the inserts correctly (Plaintiff complained to Thor on September 25, 2016, about "poor welding job"), thereby allowing frame rails to flex and/or move excessively. On information and belief, the coach frame defect was caused either by leaving the component parts of the frame outside subject to the outside elements without protection, or by defective materials.

**ANSWER: TMC denies paragraph 14.**

15. Plaintiff brought to Thor's attention cracks in RV's roof, which, on information and belief, occurred because of excessive flexing and movement of the RV's structure, on information and belief caused by either the chassis frame extension, or by improper attachment of the coach frame to the chassis, or by poor assembly of the coach frame itself. Thor deceptively attempted to conceal this lack of structural integrity of the RV and defective materials used in making the roof, by minimizing the problem and merely painting over the cracks. The roof defect occurred because Thor made the roof with defective materials, given that Thor designed the roof not to crack.

**ANSWER: TMC denies paragraph 15.**

16. Thor breached its warranty contract by being unable to repair the RV, by refusing to repair it, and by making "sham" repairs (such as merely painting over the roof cracks). Both Defendants breached their implied warranties by selling an unmerchantable RV, which is not "new," has a massive rust problem (caused by using defective materials, such as

3

rusted-out frame rails), and has structural issues (on information and belief, due to the unworkman-like extension of the chassis frame rails by Thor). Within a month of the purchase, Plaintiff revoked his acceptance and cancelled his contract.

**ANSWER: TMC denies paragraph 16.**

17. Because Thor failed to repair or replace the RV within a reasonable time, Plaintiff did not receive the benefit of the bargain—a non-defective RV—and the limited remedy of replacement or repair of defective parts of the RV failed its essential purpose, allowing Plaintiff to recover incidental and consequential damages under section 26-1-2-719 of the Indiana Commercial Code, because the exclusion was unconscionable.

**ANSWER: TMC denies paragraph 17.**

18. As a result of Thor's actions, the RV is and remains un-repaired.

**ANSWER: TMC denies paragraph 18.**

## II.     CAUSES OF ACTION

**Count I—Magnuson-Moss Warranty Act: Breach of the Implied Warranty of Merchantability, Equitable and Legal Relief, Against Thor**

19. Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

**ANSWER:  As Plaintiff acknowledges, Count I has already been dismissed by the Court and is no longer at issue.  Notwithstanding this, and without consenting to litigate these claims further, TMC reasserts its answers to all other paragraphs of this Complaint.**

20. Thor is a merchant with respect to car, such as the RV sold to Plaintiff.

**ANSWER:  As Plaintiff acknowledges, Count I has already been dismissed by the Court and is no longer at issue.  Notwithstanding this, and without consenting to litigate these claims further, TMC denies this paragraph.**

21. An implied warranty that the RV was merchantable arose by operation of law as part of the sale, because the RV came with a Thor express warranty, and, by virtue of giving Plaintiff a warranty and by virtue of its attempt to disclaim incidental and consequential damages, Thor was in privity of contract with Plaintiff.

**ANSWER:  As Plaintiff acknowledges, Count I has already been dismissed by the Court and is no longer at issue.  Notwithstanding this, and without consenting to litigate these claims further, TMC denies this paragraph.**

22. Section 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part:

> a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

4

  (A)in any court of competent jurisdiction ***.

  **ANSWER:  As Plaintiff acknowledges, Count I has already been dismissed by the Court and is no longer at issue.  Notwithstanding this, and without consenting to litigate these claims further, TMC denies this paragraph.**

23. As described above, the RV is defective and unmerchantable, in that it had multiple defects, such as rusted out frame and chassis, and structural infirmities due to extension of the chassis by Thor.  In addition, it was unmerchantable because it was not "new."  Such defects existed when the RV left Thor's control.

  **ANSWER:  As Plaintiff acknowledges, Count I has already been dismissed by the Court and is no longer at issue.  Notwithstanding this, and without consenting to litigate these claims further, TMC denies this paragraph.**

24. Because the RV was not in a merchantable condition when sold, in that, among others, it was not fit for the ordinary purposes for which such goods are used, and would not pass in trade under the contract description, Thor breached the implied warranty of merchantability.

  **ANSWER:  As Plaintiff acknowledges, Count I has already been dismissed by the Court and is no longer at issue.  Notwithstanding this, and without consenting to litigate these claims further, TMC denies this paragraph.**

25. Plaintiff notified Thor of the defects in the RV within a reasonable time after Plaintiff discovered the breach.

  **ANSWER:  As Plaintiff acknowledges, Count I has already been dismissed by the Court and is no longer at issue.  Notwithstanding this, and without consenting to litigate these claims further, TMC denies this paragraph.**

26. As a result of Thor's breach of the implied warranty of merchantability, Plaintiff suffered damages.

  **ANSWER:  As Plaintiff acknowledges, Count I has already been dismissed by the Court and is no longer at issue.  Notwithstanding this, and without consenting to litigate these claims further, TMC denies this paragraph.**

27. Thor's breach of the implied warranty of merchantability constitutes a violation of 15 U.S.C. §2310(d).

  **ANSWER:  As Plaintiff acknowledges, Count I has already been dismissed by the Court and is no longer at issue.  Notwithstanding this, and without consenting to litigate these claims further, TMC denies this paragraph.**

**Count II—Magnuson-Moss Warranty Act: Breach of Express Warranty, Against Thor**

28. Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

  **ANSWER:  TMC reasserts its answers to all other paragraphs of this Complaint.**

29. The vehicle described above is a "consumer product," as defined by the Act, because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.  15 U.S.C. §2301(1).

**ANSWER:  TMC is without information or knowledge sufficient to admit or deny paragraph 29; proof thereof, if admissible, is requested.**

30. Plaintiff is a natural person.

**ANSWER:  TMC admits paragraph 30.**

31. Plaintiff is a "consumer," as defined in the Act.  15 U.S.C. §2301(3).

**ANSWER:  TMC is without information or knowledge sufficient to admit or deny paragraph 31; proof thereof, if admissible, is requested.**

32. Thor is a "supplier" and "warrantor," as defined in the Act.  15 U.S.C. §2301(4) and (5).

**ANSWER:  To the extent paragraph 32 is not a legal conclusion for which no answer is required, TMC denies it.**

33. The manufacturer's warranty described in paragraph 8 is a "written warranty," as defined in the Act.  15 U.S.C. §2301(6).

**ANSWER:  To the extent paragraph 33 is not a legal conclusion for which no answer is required, TMC denies it.**

34. Section 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part:

> a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—
>
> in any court of competent jurisdiction ***.

**ANSWER:  To the extent paragraph 34 is not a legal conclusion for which no answer is required, TMC denies it.**

35. Plaintiff's purchase of the RV was induced by Thor.

**ANSWER:  TMC denies paragraph 35.**

36. As described above, the RV is defective, either with respect to materials or workmanship, and, as evident from the rusted out frame and chassis and structural issues that arose because of Thor's extension of the chassis, and such defects existed when it left Thor.

**ANSWER:  TMC denies paragraph 36.**

37. Because Thor was unable to, refused to repair the RV, or performed "sham" repairs, Thor breached the express warranty.

**ANSWER**: **TMC denies paragraph 37.**

38. Plaintiff notified Thor of the defects in the RV within a reasonable time after Plaintiff discovered the breach. Plaintiff complied with all of Thor's warranty terms, including Thor's back up remedy, as follows:

    a. Plaintiff brought the RV to Thor three (3) times, giving Thor multiple opportunities to repair the defects, and Thor was either unable to repair them, or(as in the case of rust) simply refused to repair them, or (as in the case of cracked roof) performed deceptive "sham" repairs; and,

    b. With respect Thor's back-up remedy, Plaintiff alleges "incurable" defects. These incurable defects include the rust, frame rail extension, and roof cracks.These defects are incurable, because to "repair" them would mean scrapping the entire RV, á la Vietnam-era adage of "we had to destroy the village in order to save it." In accordance with Thor's back-up remedy provision, Plaintiff, on October 29, 2017, in writing requested that Thor pay him his diminution of value damages. On November 1, 2017, Thor refused Plaintiff's request. By making a pre-suit demand for diminished value damages occasioned by incurable defects, Plaintiff complied with Thor's back-up remedy.

**ANSWER**: **TMC denies paragraph 38.**

39. By not repairing the RV under the terms of its warranty, by refusing the RV under the terms of its warranty, and by actually covering up warranty issues by making sham repairs (as in the case of the roof cracks), Thor breached its obligations under its warranty. Thor's breach of the express warranty constitutes a violation of 15 U.S.C. §2310(d).

**ANSWER**: **TMC denies paragraph 39.**

### Count III—Indiana Deceptive Consumer Sales Act (§24-5-0.5-3), Against Thor

40. Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

**ANSWER**: **TMC reasserts its answers to all other paragraphs of the Complaint.**

41. As described above, Thor sold Plaintiff an RV that had a rusted out frame and chassis, which was structurally unsound because of its extension. Under Indiana Deceptive Consumer Sales Act, Plaintiff gave Thor notice in writing on October 29, 2017.

**ANSWER**: **TMC denies paragraph 41.**

42. Thor concealed these problems with the RV both pre- and post-sale. Moreover, when Plaintiff brought to Thor's attention cracks on the roof (on information, due to the excessive flexing caused by the extended frame rails, or because of the improper attachment of the coach frame, or because of improper assembly of the coach frame), Thor, in violation of its obligations, refused to acknowledge the problem, and slapped on gel coat to hide the cracks. When Plaintiff later sanded the roof, he found out that, in fact, the roof fiberglass was cracked. Thor also attempted to cover up the rust problem on the interior of the RV by painting over it and also falsely blaming the corrosion on road salt.

Specifically:

> Who:  Defendant Thor, by its employees, names unknown at this time;
> What:  Concealment of two defects:  (1) cracks on the roof; (2) frame rust;
> When: June of 2016 for (1); October of 2015 for (2);
> Where: (1) Thor's repair facility, Wakarusa, Indiana; (2) Arizona RV sales lot, Mesa, AZ.
> How: (1) By slapping on a gel coat to hide the cracks; (2) by painting over rust and by verbally falsely attributing the corrosion to road salt, when, in fact, the chassis, frame rails, and coach frame were rusted out on Thor's lot, pre-assembly, because, on information and belief, Thor left them to rust there and consequently used these defective materials in assembling the RV.

**ANSWER:  TMC denies paragraph 42.**

43. This concealment was an unfair and deceptive act or practice in violation of the Act.

**ANSWER:  TMC denies paragraph 43.**

**Count IV—Magnuson-Moss Warranty Act:  Breach of the Implied Warranty of Merchantability, Equitable and Legal Relief, Against Arizona RV**

44. Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

**ANSWER:  TMC reasserts its answers to all other paragraphs of the Complaint.**

45. Even though Arizona RV attempted to disclaim implied warranties, its disclaimer was in effective, because it was not conspicuous. Exhibit A, p. 2.

**ANSWER:  TMC denies paragraph 45.**

46. Alternatively, Arizona's RV attempted disclaimer of implied warranties was ineffective because it "entered into" a service contract with Plaintiff, and, under Section 2308(a) it could not disclaim implied warranties as a matter of law. Exhibit C, p. 2 ("In the event of a Mechanical Breakdown, take the Unit to the dealer that sold You this Agreement, if at all possible.")

**ANSWER:  TMC denies paragraph 46.**

47. Section 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part:

> a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—
>
> in any court of competent jurisdiction ***.

**ANSWER:  To the extent paragraph 47 is not a legal conclusion for which no answer is required, TMC denies it.**

48. As described above, the RV is defective and unmerchantable, in that it had multiple defects, such as rusted out frame rails, chassis, and coach frame, unrepairable mirrors, and structural integrity was compromised due to extension of the frame rails by Thor.  In addition, it was unmerchantable because it was not "new."  Such defects existed when the RV left Thor's control.

**ANSWER:  TMC denies paragraph 48.**

49. Because the RV was not in a merchantable condition when sold, in that, among others, it was not fit for the ordinary purposes for which such goods are used, and would not pass in trade under the contract description, Thor breached the implied warranty of merchantability.

**ANSWER:  TMC denies paragraph 49.**

50. Plaintiff notified Arizona RV of the defects in the RV within a reasonable time after Plaintiff discovered the breach, and gave Arizona RV an opportunity to repair the defects. However, Arizona RV either failed to repair them, or refused to repair them.

**ANSWER:  TMC denies paragraph 50.**

51. As a result of Arizona RV's breach of the implied warranty of merchantability, Plaintiff suffered damages.

**ANSWER:  TMC denies paragraph 51.**

52. Arizona RV's breach of the implied warranty of merchantability constitutes a violation of 15 U.S.C. §2310(d).

**ANSWER:  TMC denies paragraph 52.**

**Count V— Revocation of Acceptance, Cancellation of Contract under Arizona Commercial Code (§§47-2608 and 46-2711, Arizona Revised Statutes), Against Arizona RV**

53. Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

**ANSWER:  TMC reasserts its answers to all other paragraphs of the Complaint.**

54. Because the RV was not "new," because it had a rusted-out frame and chassis, and because, on information and belief, its structural integrity was compromised, and because, on information and belief, it sustained undisclosed pre-sale damage to its right front end, its value was substantially impaired to Plaintiff.

**ANSWER:  TMC denies paragraph 54.**

55. Plaintiff revoked his acceptance and canceled his contract within a month after the purchase.

**ANSWER:  TMC denies paragraph 55.**

56. Arizona RV refused to return his money and cancel the sale.

**ANSWER:  TMC denies paragraph 56 because it implies a legal duty to cancel the sale or return money which did not exist.**

57. Unable to buy replacement goods, Plaintiff continued to use the RV in mitigation of his damages.

**ANSWER:  TMC admits Plaintiff has continued to use his RV; TMC denies the remainder of paragraph 57.**

58. The RV is in the same condition as at sale, except for the defects that existed at the time of the sale (i.e., rusted out frame and chassis, and the problem with its structural integrity due to the extension of the frame).

**ANSWER:  TMC denies paragraph 58.**

59. Revocation of acceptance and cancellation of contract are UCC self-help remedies.

**ANSWER:  TMC denies paragraph 59.**

60. Because the value of the RV is substantially impaired to Plaintiff, he was justified in revoking his acceptance and canceling his contract with Arizona RV.

**ANSWER:  TMC denies paragraph 60.**

**Count VI— Arizona Consumer Fraud Act (§44-1522, Arizona Revised Statutes), Against Arizona RV**

61. Plaintiff re-alleges all the factual allegations contained in all other paragraphs of this Complaint, and incorporates them herein by reference.

**ANSWER:  TMC reasserts its answers to all other paragraphs of the Complaint.**

62. As described above, Arizona RV sold Plaintiff an RV that was not "new" (on information and belief Defendant used it as a "demo" for RV shows).

**ANSWER:  TMC denies paragraph 62.**

63. As described above, Arizona RV charged Plaintiff an inspection fee and did no inspection. Plaintiff learned about this fact sometime after November 26, 2015, when he received a phone call from Shawn Williams, former General Manager of Arizona RV, during which Mr. Williams (who was trying to get Plaintiff to agree to invest in his new RV dealership) disclosed to Plaintiff that the inspection had not been performed, and that the Arizona RV employee responsible for this was fired.  During the same phone call, some time after November 26, 2015, Mr. Williams informed Plaintiff that the supposedly "new" RV was used as a demonstrator at the Phoenix Speedway.

**ANSWER:  TMC denies paragraph 63.**

64. If Arizona RV had done the inspection, it would have discovered the rust problem, and should have informed Plaintiff, given that Plaintiff paid $1,200 for the inspection.

10

Alternatively, if Arizona RV did not do the inspection, this means it stole $1,200 from Plaintiff.

**ANSWER: TMC denies paragraph 64.**

65. Arizona RV also failed to tell Plaintiff that the supposedly "new" RV had its frame rails extended by the manufacturer, which made the RV structurally unsound.  Plaintiff first learned about this defect on or about September 25, 2016, when he surmised that the RV must have been wrecked by Arizona RV. It is only after October 1, 2016, when, being fed up with his inability to have the RV fixed under its warranties, he hired an expert to inspect the RV for multiple problems, and received the expert's report, that Plaintiff learned that the frame rails were extended. In addition, on information and believe, the RV was involved in a pre-sale accident, that damaged its front end, resulting in structural misalignment of its body and paint issues (including "orange peel" condition).  Arizona RV did not tell Plaintiff about this pre-sale damage.

**ANSWER: TMC denies paragraph 65.**

66. These misrepresentations, concealments, omissions, and suppressions of material facts were unfair and deceptive acts or practices in violation of the Act.

**ANSWER: TMC denies paragraph 66.**

**WHEREFORE** Defendant Thor Motor Coach, Inc., by counsel, prays for judgment in its favor and against Plaintiff, for the costs of this action and for any other just or proper relief.

> */s/ Trevor Q. Gasper*
> Trevor Q. Gasper (IN 26368-71)
>
> **THOR INDUSTRIES, INC.**
> 601 E. Beardsley Ave.
> Elkhart, IN 46514
> Telephone: (574) 970-7925
> Facsimile: (574) 206-9880
> tgasper@thorindustries.com

### **AFFIRMATIVE DEFENSES**

Thor Motor Coach, Inc., by counsel, asserts the following affirmative defenses to Plaintiff's Second Amended Complaint:

1. Plaintiff's Second Amended Complaint fails, in whole or in part, to state a claim.  Specifically, the Complaint suffers from the following legal deficiencies:

    a. The Complaint alleges there was a contract or there exists privity of contract between Thor and Plaintiff.  However, Exhibit A to the Complaint is contradicts this allegation

11

and makes it clear that Plaintiff's contract was with Camping World of Mesa AZ and not Thor. The existence of a limited warranty issued by a manufacturer is not sufficient to establish privity of contract. Accordingly, Plaintiff's claims of breach of any implied warranty fails under Arizona and/or Illinois law. The Court already dismissed any such implied warranty claim against TMC. TMC understands that Plaintiff does not intend to pursue such claim again but merely re-pled the claim to avoid any argument of waiver and to preserve the issue on appeal. TMC believes such re-pleading was unnecessary to preserve the issue for appeal. To the extent TMC is forced to engage in further motion practice on this point, TMC will seek its reasonable fees and costs for such exercise.

b. Plaintiff's Complaint fails to sufficiently allege that Plaintiff availed himself to the back-up remedy under the Limited Warranty. The Limited Warranty provides that if Thor Motor Coach is unable to repair a covered warranty item in a reasonable number of attempts or time, Plaintiff's remedies are limited to having repair performed and requesting reimbursement for such repairs by Thor Motor Coach or, if the defect is not repairable, to demand Thor Motor Coach pay actual diminution damages. Plaintiff failed to exhaust either remedy before filing this lawsuit because all issues complained of, to the extent they exist, are curable and no repairs were effectuated. Further, to the extent any such issues are not repairable, Plaintiff did not demand actual diminished value. As such, Plaintiff fails to state a claim for breach of express warranty.

c. Because Plaintiff's Magnuson Moss claims rise and fall with his warranty claims, Plaintiff has also failed to sufficiently allege a violation of the Magnuson Moss Warranty Act.

d. Plaintiff's Indiana Deceptive Consumer Sale Act claim fails because Arizona, and not Indiana, tort law would apply to Plaintiff's claims. Moreover, the Indiana Deceptive Consumer Sales Act does not apply to post-sale conduct and Plaintiff's claims against TMC under the IDCSA relate wholly to alleged post-sale conduct.

2. This Court lacks subject matter jurisdiction as the amount in controversy is less than the minimum jurisdictional amount of $50,000 set forth in 11 U.S.C. 2301, *et. seq.*

3. Plaintiff's Second Amended Complaint is barred, in whole or in part, by applicable statutes of limitation as the First Amended Complaint and Second Amended Complaint were filed after the expiration of all applicable statutes of limitation.

4. To the extent Plaintiff's Second Amended Complaint includes any remedy of rescission or revocation of acceptance, Plaintiff fails to state a claim or viable remedy that Plaintiff is entitled to because both of these remedies require privity of contract and there is no privity of contract between Plaintiff and TMC. Any claim for revocation of acceptance further fails because Plaintiff failed to give timely notice of such revocation of acceptance.

5. To the extent Plaintiff's Second Amended Complaint alleges, or Plaintiff later alleges, the existence of any defect that was not discovered before August 21, 2016 and reported to TMC, Plaintiff's claims based upon these defects are barred by the limitation on the duration of the warranty coverage.

6. Plaintiff's claims for breach of warranty claims are barred to the extent Plaintiff utilized the RV for commercial or business purposes and such claims arose 90 days after first delivery or after the odometer reached 5,000 miles, whichever occurred first.

7. Plaintiff's claims for breach of warranty are barred to the extent Plaintiff, or an unauthorized third party, altered, abused, misused, modified, neglected, or otherwise damaged the RV.

8. Plaintiff's claims are barred by the failure of conditions precedent, including, but not limited to, failing to properly notify TMC of any alleged defect, malfunction, or failure to conform within a reasonable time after the discovery of such alleged defect, malfunction, or failure to conform.

9. TMC provided a limited warranty only. To the extent Plaintiff's RV requires warranty repairs, Plaintiff's remedies are limited to repair or replacement of such parts as are specifically covered by the limited warranty.

10. Plaintiff has failed to mitigate his damages, if any, by failing to properly avail himself to the back-up remedy of the warranty or effectuate repairs to the motorhome. Discovery may also reveal additional instances where Plaintiff failed to mitigate his damages.

11. Plaintiff's Indiana Deceptive Consumer Sales Act cause of action fails to state a claim against TMC, Inc. because if the acts at issue are curable then Plaintiffs failed to comply with the Act by providing TMC with written notice and an opportunity to cure; and, if the acts at issue are incurable, then Plaintiffs failed to plead the elements of fraud with particularity as required under FRCP 9(b).

12. Any alleged representations constituting unfair or deceptive acts were made in good faith and without knowledge of their falsity.

13. TMC timely, reasonably, appropriately, and conspicuously disclaimed liability for consequential and incidental damages.

14. To the extent Plaintiff bases his claims upon alleged warranties, representations, or undertakings beyond those expressly stated in the Limited Warranty, those claims are barred, in whole or in part, by the doctrines of merger, integration, the statute of frauds, and the parol evidence rule.

15. Plaintiff's damages, if any, must be limited or reduced to include an offset for Plaintiff's beneficial use of the motorhome.

WHEREFORE Thor Motor Coach, Inc., by counsel, prays that Plaintiff take nothing by way of his complaint, for judgment in its favor and against Plaintiff, for the costs of this action, and for all other just and proper relief.

*/s/ Trevor Q. Gasper*
Trevor Q. Gasper (IN 26368-71)

**THOR INDUSTRIES, INC.**
601 E. Beardsley Ave.
Elkhart, IN 46514
Telephone: (574) 970-7925
Facsimile: (574) 206-9880
tgasper@thorindustries.com

## CERTIFICATE OF SERVICE

    I hereby certify that on January 15, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Dmitry Feofanav, and I hereby certify that I have mailed, by United States Postal Service, the document to the following non CM/ECF participants: N/A.

*/s/ Trevor Q. Gasper*